**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

ROGER GUT,

                Plaintiff,                Case No. 20-CV-1111

vs.

CITY OF WAUSAU,
ROBERT P. PFAFF,
BENJAMIN J. THUMANN,
BRENT D. OLSON, AND
JOHN F. SHEAR,

                Defendants.

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

---

# INTRODUCTION[1]

Although absent from his Complaint, Plaintiff argues for the first time in his Response a failure to intervene claim against Officer Shear. Plaintiff's failure to this claim renders it waived, thus Defendants have not addressed it here. *See United States v. Ritz*, 721 F. 3d 825, 827-28 (7th Cir. 2013). Plaintiff also concedes that the facts of this case do not warrant punitive damages, by failing to respond to Defendants' argument that the Defendants did not act with evil motive or intent warranting punitive damages. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1075 (7th Cir. 2016)(concluding that the counts were waived since plaintiffs never responded to defendants' arguments).

Plaintiff's Response summarily concludes that Plaintiff was arrested in his home without probable cause, reasonable suspicion, or exigent circumstances. Plaintiff argues that even if the Defendant Officers lawfully detained him based on reasonable suspicion of a crime, they used excessive force by handcuffing him and pointing guns at him, and escalated the detention into an arrest. Plaintiff's Response glosses over the exigent circumstances and obvious danger facing the Defendant Officers during the encounter. In doing so, Plaintiff suggests that Defendants should have allowed him—a frustrated 911 caller claiming to be loading a gun—to roam freely during a shooting incident. Plaintiff's position is both legally and factually erroneous.

Accordingly, the Court should summarily dismiss Plaintiff's claims and grant summary judgement in favor of the Defendants.

---

[1] Plaintiff and Defendants have both filed summary judgment motions. (Dkts 20, 26) The parties filed their respective Responses to the motion and have all briefed what they believe are the legal issues to be resolved. The Defendants now file this Reply. To conserve Court resources and avoid unnecessary repetition, the Defendants incorporate all legal and factual arguments made in their summary judgment and responsive filings to date.

1

I. **PLAINTIFF HAS FAILED TO RAISE A DISPUTE OF FACT REGARDING ANY OF HIS CONSTITUTIONAL CLAIMS.**

Plaintiff failed to genuinely dispute any of the Defendants' proposed facts and instead, speculates that the Officers should have interpreted his statements and actions differently during the August 27, 2020 event. (*See* Dkt. 33; Dkt. 34, p. 4-8) Plaintiff relies on his subjective belief and conclusory opinions to advance his arguments that: (1) he was seized inside his home without a warrant, probable cause or exigent circumstances; (2) he was unreasonably seized on his front porch without a warrant, probable cause or exigent circumstances; (3) he was unreasonably seized on his lawn without reasonable suspicion; (4) the detention was escalated into an arrest; (5) the scope of the detention was unlawful; and (6) the Defendants used unreasonable force in detaining him by handcuffing him. Plaintiff's "speculation is not a sufficient defense to a summary judgment motion." *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841–42 (7th Cir. 1996)(ruling that plaintiff's subjective beliefs could not defeat summary judgement).

For instance, Plaintiff suggests that the Defendant Officers should have interpreted his statements to the Dispatcher that he was loading his gun as non-dangerous, made for self-defense purposes only. Plaintiff had the following exchanges with Dispatch:

| | |
|---|---|
| Dispatch: | Is he laying on your lawn? Is he standing on it? |
| Gut: | I have no – I -- yeah -- I have no idea. All I know is he was pounding on my door. I'm going to go load my gun to protect myself. |

(Dkt. 21-2, 3:25; 4:1-5)

| | |
|---|---|
| Dispatch: | Did they say that you were going to be loading your gun? |
| Gut: | Well, yeah, in case somebody comes in my house and is going to shoot me, I'm going to have a gun to protect myself. |
| Dispatch: | Okay. Okay. So, what kind of gun do you have, Roger? |
| Gut: | Okay. I can't get a police officer in my house? |

2

| | |
|---|---|
| Dispatch: | I'm going to give you an officer, but you need to answer my questions first. Does that make sense? |
| Gut: | No, not at all. |
| Dispatch: | It doesn't make sense?  If you have— |
| Gut: | Are you going to protect me? |
| Dispatch: | Roger, do you have weapon on you right now? |
| Gut: | I have a lot of weapons in my house. |

(Dkt. 21-2, 6:3-23)

| | |
|---|---|
| Dispatch: | So, once the officers make sure that you do not have a weapon and the person outside your home does not have a weapon, they will absolutely make contact with you.  They're there to help you. So, I just—do you have a gun— |
| Gut: | Well, if— |
| Dispatch: | --right now? |
| Gut: | Your definition of helping and my definition of helping apparently are different. |

(Dkt. 21-2, 9:8-18)

Plaintiff's subjective belief that the Defendant Officers should have interpreted these statements made purely for self-defense and infer no threat, does not make it so. The Defendant Officers can only take actions based on the information known to them, and also based on their professional experience. It was unclear who Plaintiff was claiming he needed to defend himself from—the victim suffering from a gunshot wound outside of his house and allegedly pleading for help, or the responding police officers with whom he was angry. (Dkt. 29, ¶ 117; *see also* Dkts. 21-1; 21-2; 21-3; 21-4)

3

These speculatory and conclusory responses to the admissible evidence submitted by Defendants by Plaintiff do not create genuine disputes of material fact barring the Defendants from summary judgment.

## II. THE DEFENDANT OFFICERS DID NOT VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEZIURES.

### A. The Defendant Officers Did Not Arrest Plaintiff.

Plaintiff argues that the Defendant Officers escalated the detention into an arrest without probable cause. (Dkt. 34, p. 19-21) In support, Plaintiff argues that a *Terry* stop can become an arrest, requiring probable cause, if the officer's use of force is disproportionate to the purpose of the stop, or if the detention continues longer than necessary to accomplish the purpose of the stop. (*See* Dkt. 34, p. 20, *citing Terry* at 524-525.) Plaintiff was detained by the Officers due to his threats to Dispatch and claims of loading a weapon. (*See* Defs' Reply PFOF ¶¶ 79, 96-97, 109, 112-117) The Defendant Officers pointing their weapons in Plaintiff's direction and detaining him was proportionate to the purposes of preventing the potentially armed and dangerous Plaintiff from harming responding personnel or the victim during the shooting investigation. The detention lasted only for the length of the investigation. (*See* Dkt. 33, ¶¶ 73, 79, 109; Dkt. 21-6, 7)

As stated in Defendants' moving Brief, the mere use or display of force in making a stop does not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety. (*See* Dkt. 28, pp. 7-8, *citing United States v. Moore,* No. 1:19-CR-84-HAB, 2020 WL 3170337, at *3 (N.D. Ind. June 15, 2020)). Courts in this circuit have held that relying on guns pointed at a suspect does not ensure officer safety, and handcuffing is permissible as part of a *Terry* stop where dispatch indicates that plaintiff is in possession of several weapons. *United States v. Moore*, No. 1:19-CR-84-HAB, 2020 WL 3170337, at *4 (N.D. Ind. June 15, 2020); *United States v. Perdue*, 8 F.3d 1455, 1463 (7th Cir. 1983). Further, courts have

4

routinely held that detaining an individual for the length of an investigation is reasonable and does not escalate a detention into an arrest. *See, e.g., Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017).

Based on the law cited above, Plaintiff's detention did not escalate to an arrest.

### B. Plaintiff Was Seized Outside of His Home.

Plaintiff advances his Fourth Amendment argument on the basis that he was seized inside of his home or on his porch, therefore requiring probable cause or exigent circumstances (Dkt. 34, pp. 11-15). The arguments that Plaintiff was seized inside his home or on his porch fail because an attempted seizure is not a seizure, and he was not seized until he was outside of his home. (Dkt. 30, pp. 100-102; Dkt. 21-7 at 13:25-13:35) Even assuming *arguendo* that Plaintiff was seized in his home or on his front porch, that seizure was justified by the exigent circumstances facing the Defendant Officers.

Voluntary interactions between police and citizens do not trigger Fourth Amendment protection. *Fla. v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991). Only when the interactions become nonconsensual and the person believes that he or she is not free to leave, do Fourth Amendment protections come into play. *Id.* at 435. Under this approach, a seizure does not occur until a person actually submits or yields to an officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991). An attempted seizure is not subject to Fourth Amendment protection. *Id. Terry* stops are applicable within the curtilage of one's home where there is a concern for weapons. *United States v. Richmond*, 924 F. 3d 404, 412 (7th Cir. 2019).

Plaintiff reasonably believed that he was free to leave even after he left his porch. In fact, he laughed as the Defendant Officers commanded him to stay outside and said "I'm going back in the house." (Dkt. 33, ¶¶ 101-102) Plaintiff then began walking towards his porch and was seized

5

by Officers Pfaff and Thumann prior to him stepping on his porch. (Dkt. 33, ¶ 103) Plaintiff does not dispute these facts, which clearly show that he believed that he was free to leave, as made clear by his statement and action of walking back towards the house. It is also clear from these facts that Plaintiff had not submitted himself to the Officers' show of authority on his porch. Thus, Plaintiff's argument that he was seized inside his home must fail. *See Hodari D.*, 499 U.S. at 625–26.

Plaintiff cites *Gentry v. Sevier* for the proposition that a person is seized when an officer instructs them to put their hands up. (*See* Dkt. 34, p. 12, citing *Gentry v. Sevier*, 597 F.3d 838, 844–45 (7th Cir. 2010)). *Gentry* is legally and factually inapplicable because it does not involve an individual who did not submit to the officers' show of authority. 597 F. 3d at 842-843. In *Gentry*, the plaintiff was pushing a wheelbarrow full of miscellaneous items when an officer got out of a squad car and told plaintiff to put his hands up. *Id.* The plaintiff kept his hands up while the officers patted him down. *Id.* Plaintiff did not state he was going to leave, or make any attempt to leave. *Id.*

That is not the case here. Plaintiff laughed off the Officers' commands, stated he was going back inside, and began walking away from the Officers and towards his home. (Dkt. 33, ¶¶ 101-102) Plaintiff was seized by Officers Pfaff and Officer Thumann as he walked back towards his home. (Dkt. 33, ¶ 103) Plaintiff's actions as described above demonstrate that he believed he was free to leave.

        **C.**      **Even Assuming *Arguendo* That Plaintiff Was Seized Inside His Home or On His Porch, Exigent Circumstances Justified the Officers' Actions.**

Plaintiff's Response and partial Motion for Summary Judgment argue that he was seized inside his home without a warrant or probable cause. (Dkt. 31, p. 9-10; Dkt. 34, p. 11-15) While

6

it is true that warrantless searches or seizures inside a home are presumptively unreasonable, "the ultimate touchstone of the Fourth Amendment is reasonableness" and so there are reasonableness exceptions to the warrant requirement. *Kentucky v. King*, 563 U.S. 452, 459 (2011). One well-recognized reasonableness exception is when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 460.

Exigency exists, and a warrantless entry is justified, when a reasonable person would believe that entry or other relevant prompt action was necessary to prevent physical harm to police officers or other persons. *United States v. Barnett*, No. 19-CR-30036-NJR-1, 2020 WL 3962266, at *5 (S.D. Ill. July 13, 2020); *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (finding exigent circumstances for warrantless entry into home where police officers believed that the defendant could access potentially loaded gun inside); *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) "Unexpected and dangerous events that arise during an [investigation] can create exigent circumstances that justify law enforcement officers entering a residence in order to protect themselves from any additional and unknown threats." *United States v. Hill*, 430 F.3d 939, 941 (8th Cir. 2005). Courts evaluate "the circumstances as they appeared at the moment of entry." *Huddleston*, at 601, *citing United Stated v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993).

Indeed, a number of other circuits have "found the presence of guns to justify searches and seizures on the basis of exigent circumstances." *Huddleston* at 600 (7th Cir. 2010); *United States v. Reed,* 935 F.2d 641, 643 (4th Cir. 1991) (holding that the presence of a sawed-off shotgun in plain view could have constituted a threat to the personal safety of the officers and thus justified the warrantless seizure); *United States v. Lindsey,* 877 F.2d 777, 780–82 (9th Cir. 1989)(information about presence of guns and bombs justified warrantless entry); *United States v. Hill,* 730 F.2d

7

1163, 1170 (8th Cir. 1984) (entry justified by officer's observation through a sliding glass door of a pistol on a bookcase). In addition, a suffering and injured victim located directly outside of a home justifies a warrantless search where the homeowner could potentially harm the officers or the victim. *Barnett* at *5.

In *United States v. Kempf*, the Seventh Circuit held that the exigent circumstances justified officers' entry into the defendant's room, where the officers feared for their own safety and the safety of those inside the house. 400 F.3d 501, 503 (7th Cir. 2005). There, the defendant informed the officers that he had been shot accidentally, and that there was a teenage boy in the house where the shooting occurred. *Id.* When the officers entered the house and began talking to the teenage boy, they established that the boy did not appear to be in any immediate danger, but they still did not know the exact details of the shooting, where the gun was located, whether the gun was loaded, who else may have been in the house, or whether anyone in the house may have been involved in the shooting. *Id.* The Court concluded that when the teenage boy began climbing the stairs to retrieve the gun, despite the officers' repeated warnings, the officers had every reason in the world to fear for their safety and the safety of others who may have been inside the house. *Id.*

Here, even if the Defendant Officers entered Plaintiff's home (which they did not), their actions would have been justified because they reasonably feared for their safety, the victim's safety, and Mrs. Gut's safety. Similar to *Kempf*, when the Defendant Officers arrived at the scene and began talking to the Plaintiff, they still did not know the exact details of the shooting, where the gun was located, whether the gun was loaded, who else may have been in the house, or whether anyone in the house may have been involved in the shooting. Responding to a shooting incident without an identified shooter is dangerous, and when coupled with a frustrated homeowner who

8

has threatened Dispatch and proclaimed to be in possession of many weapons and loading a gun—would terrify most people.

Thus, exigent circumstances existed to seize Plaintiff during the Officers' investigation of the shooting.

### III. OFFICERS MAY DETAIN AN INDIVIDUAL DURING AN INVESTIGATION WHERE THEY REASONABLY BELIEVE THE INDIVIDUAL IS ARMED AND DANGEROUS.

#### A. Plaintiff's Reliance on *Terry v. Ohio* is Misplaced.

Plaintiff argues that even if his seizure did not require probable cause, under *Terry v. Ohio* the Officers were required to have reasonable suspicion to seize him on his lawn, which he states they did not have. (*See* Dkt. 34, pp. 15-19) Specifically, Plaintiff claims that "[f]irst, an officer can detain someone with reasonable suspicion, grounded in specific and articulable facts that someone has committed, is committing, or is about to commit a crime. *Lopez*, 907 F. 3d at 478. Then, second, once the suspect is detained, an officer can frisk a person if and only if the suspect is 'armed and presently dangerous.'" (*See* Dkt. 34, p. 15-16); *citing United States v. Lopez*, 907 F.3d 472, 485 (7th Cir. 2018))."

This is legally inaccurate, and Plaintiff's reliance on *Lopez* is misplaced. The officers in *Lopez* observed nothing indicating that the defendant may have been armed and dangerous. *See Lopez*, 907 F.3d at 485-86 (ruling that to frisk a person who is already the subject of a *Terry* stop, there must be reasonable suspicion that the person whom the officer is dealing with may be armed and presently dangerous).

Plaintiff's argument that officers are required to have reasonable suspicion before they can detain or search an individual who may be armed and dangerous is wrong and would defeat the purpose of *Terry*. *Terry* made it clear:

9

> It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest. Moreover, a perfectly reasonable apprehension of danger may arise long before the officer is possessed of adequate information to justify taking a person into custody for the purpose of prosecuting him for a crime.

*Terry v. Ohio*, 392 U.S. 1, 26–27, 88 S. Ct. 1868, 1882–83, 20 L. Ed. 2d 889 (1968). As *Terry* concluded, danger can often arise well before an officer possesses reasonable suspicion that a crime was committed or about to be committed. *Id.* at 26–27; *see also United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989)(ruling that *Terry* provides an exception to probable cause and reasonable suspicion where the officer has reason to believe that the person he is dealing with may be armed and dangerous).

Plaintiff incorrectly concluded that the Officers needed to first have reasonable suspicion that that he committed or was committing a crime before the Officers could take measures to protect themselves. Plaintiff's attempt to distinguish the Defendants' "armed and dangerous" cases on that basis fails, and this Court must reject Plaintiff's argument which contradicts the intent of *Terry*.

### B. The Defendant Officers' Actions were Constitutional Even Under Plaintiff's Incorrect *Terry* Standard.

Plaintiff argues that the Defendant Officers did not have reasonable suspicion that crime was afoot sufficient to detain him. (Dkt. 34, p. 15) However, even under the inapplicable *Terry* standard, the Defendant Officers had reasonable suspicion based on Plaintiff's 911 call.

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] recognizes that it may be the essence of good police work to adopt an intermediate response." *Adams v.*

10

*Williams*, 407 U.S. 143, 145 (1972). The Fourth Amendment permits police officers to conduct brief investigative "Terry stops" where, based on "the totality of the circumstances," the officers "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *see also Terry*, 392 U.S. at 21–22. "Reasonable suspicion depends on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Navarette v. California*, 572 U.S. 393, 402 (2014) An emergency call or anonymous tip can serve as the basis for the reasonable suspicion. *United States v. Hensley*, 469 U.S. 221, 232 (1985).

Here, Plaintiff's 911 call and the information he relayed to the Officers served as the basis for their reasonable suspicion. Plaintiff called 911, reported that a victim was suffering from a gunshot wound outside of his house, and did not identify a suspect. (*See* Dkt. 33, ¶ 9) Plaintiff refused to answer additional questions from Dispatch regarding the shooting, stated that he was going to load his gun, and claimed to be in possession of many weapons. (*See* Dkt. 21-2, 3:25; 4:1-5; 6:3-23; 9:8-18)  Based on this information, none of the Officers knew who had shot the victim, and Plaintiff claimed to have weapons on or near him. (*See* Dkt. 29, ¶¶ 48, 115; Defs' Reply PFOF ¶¶ 48, 115) Thus, the Officers had reasonable suspicion that Plaintiff may have been the shooter.

Further, Plaintiff made threats that he was armed and dangerous creating the need for the Officers to detain him. (*See* Dkt. 21-2, 3:25; 4:1-5; 6:3-23; 9:8-18) Plaintiff fails to address the Defendants' armed and dangerous argument before concluding that "the officers didn't need to detain Gut outside of his house" and that there was "no reason . . . to assume that Gut might be dangerous." (See Dkt. 34, p. 19)  This argument ignores Plaintiff's statements.  Plaintiff told Disptach there was someone outside his house who had been shot, and did not identify a shooter. He later threatened Dispatch that the officers better have a good response, before hanging up a

11

little while later. (Dkt. 29, ¶¶ 112, 114, 117; Defs' Reply PFOF ¶¶ 112, 114, 117; 21-2, 2:23-25) Plaintiff also told Dispatch he had a lot of weapons in his home, and was loading one of his guns. (Dkt. 21-2, 6:3-23) These statements are why the Defendant Officers requested that Dispatch have Plaintiff exit his home, while they took cover behind trees in his front lawn. (Dkt. 33, ¶¶ 40, 67)

The Defendant Officers had reasonable suspicion to believe that Plaintiff had committed or was about to commit a crime, based on his own statements to Dispatch.

### VI.  PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST BE DISMISSED.

Plaintiff argues that there was no reason to use any force, and that the Defendant Officers' actions in pointing their weapons at him and placing him in handcuffs, were excessive. (*See* Dkt. 34, p. 21) Plaintiff argues three points in support of his position: (1) the Officers did not reasonably suspect him of having committed any crime; (2) Plaintiff did not pose a threat to the Officers; and (3) Plaintiff did not try to flee. (Dkt. 34, p. 22)

Each of these arguments is speculative and conclusory and cannot be the basis to defeat summary judgment. *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999); *see also Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841–42 (7th Cir. 1996) (ruling that plaintiff's subjective beliefs could not defeat summary judgement). Nevertheless, the Officers had reasonable suspicion that Plaintiff committed a crime, as argued *supra* section III. b. The Defendant Officers also reasonably believed that Plaintiff posed a threat to them based on his statements to Dispatch. Plaintiff also attempted to head back into the house in defiance of the Officers' commands for him to stay where he was.

In light of these facts, the Defendant Officers were justified in pointing their weapons in Plaintiff's direction, and utilize handcuffs to prevent him from re-entering his home where he possessed many weapons. Plaintiff's speculative belief that the Officers should not have seen him as threat is baseless. *Los Angeles Cty., California v. Rettele*, 550 U.S. 609, 610–11 (2007) (ruling

that officers pointing their guns at undressed residents who were of a different race than the suspect reasonable where the residents may have weapons nearby).

Courts in this circuit have held the use of handcuffs is not excessive despite a plaintiff's complaints that the handcuffs were too tight, and despite the redness on a plaintiff's wrists caused by the handcuffs, where the plaintiff is handcuffed for 25 to 35 minutes and had not sought medical care for any wrist injury. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2009). Here, Plaintiff was in handcuffs for less than five minutes while the Officers investigated the scene. Although he requested that Officer Pfaff remove the handcuffs, Plaintiff never complained of any pain and he never sought medical care for any wrist injury. (Dkt. 33, ¶¶ 85-86; Dkt. 21-6)

Defendants were justified in using force to briefly detain Plaintiff, therefore dismissal of his excessive force claim is warranted.

## VII.   ANY CLAIM AGAINST BRENT OLSON MUST BE DISMISSED.

Plaintiff admits that Lieutenant Brent Olson was behind the house when he was detained *in front of the house.* Lt. Olson did not assist in his alleged unconstitutional detention. (*See* Dkt. 33, ¶¶ 57-59) As argued in Defendants' moving brief, courts in the Seventh Circuit routinely dismiss Section 1983 claims against officers who were not personally involved in the use of force or arrest. *See Outlaw v. Vill. of Shorewood*, No-19-CV-1092, 2021 WL 424224, at *6 (E.D. Wis. Feb 8, 2021). Plaintiff's excessive force claim against Lt. Olson must similarly fail due to his lack of personal involvement in detaining Gut.

## VII.   PLAINTIFF HAS FAILED TO DISPUTE DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY.

Although qualified immunity is an affirmative defense, once raised the burden shifts to the non-moving party to defeat the defense by demonstrating that the undisputed facts establish a violation of "clearly established" right. *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). A

13

clearly established right cannot be shown with "high levels of generality." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). Instead, a plaintiff must offer "**controlling authority**" or "a robust consensus of cases of persuasive authority" barring such conduct as of the date of the incident. *Id, emphasis added*.

As Defendants have shown, an officer is entitled to point their gun and handcuff a potentially armed and dangerous individual while they investigate a 911 call. *See, e.g., Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017) (ruling that removing a driver from his vehicle and detaining him for thirty minutes while officers investigated the 911 call was reasonable); *United States v. Vaccaro*, 915 F.3d 431, 437–38 (7th Cir. 2019) (ruling that an officer may detain an individual for the length of an investigation pursuant to a *Terry* stop and prevent them from accessing their vehicle where they can gain control of weapons); *United States v. Moore*, No. 1:19-CR-84-HAB, 2020 WL 3170337, at *1 (N.D. Ind. June 15, 2020) (ruling that is was reasonable for the officers to detain the suspect and prevent him from accessing his car for the duration of the investigation, even though no gun was found on the suspect); *United States v. Glenna*, 878 F.2d 967, 968 (7th Cir. 1989)(ruling that detaining an individual for ten minutes based on dispatch information that the individual possessed several small weapons was reasonable); *see also Los Angeles Cty., California v. Rettele*, 550 U.S. 609, 610–11 (2007) (ruling that officers pointing their guns at undressed residents who were of a different race then the suspect reasonable where the residents may have weapons nearby).

Plaintiff's Response fails to identify any authority that an officer cannot point a gun or handcuff an individual believed to be armed and dangerous. Instead, Plaintiff advances different scenarios based on his speculative and conclusory belief that he was seized in his home, and his mistaken belief that *Terry* stops require reasonable suspicion of criminal activity. (Dkt. 34, p. 23-

29) Plaintiff's argument that constitutional law establishes the sanctity of the home and its curtilage is inapplicable, because he was seized outside of his home. Plaintiff's argument that *Terry* requires reasonable suspicion before an officer can detain an individual with whom they are dealing during an investigation is incorrect, because *Terry* specifically created a carve out to enable officers to protect themselves when confronted with danger prior to attaining reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 26–27. Plaintiff's argument that the scope of the *Terry* stop was unreasonable and excessive fails because courts do not find constitutional violations for gun pointing or handcuffing when there is a reasonable threat of danger or violence to police. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009).

The Defendant Officers are entitled to qualified immunity.

## CONCLUSION

For the reasons stated in the moving Brief and in this Reply, Defendants respectfully request that this Court dismiss all claims alleged against them.

Dated at Wauwatosa, Wisconsin this 17th day of January 2022.

**GUNTA LAW OFFICES, S.C.**
Attorneys for Defendants

BY:  */s/ Kyle R. Moore*
Gregg J. Gunta, WI Bar No. 1004322
Ann C. Wirth, WI Bar No. 1002469
Jasmyne M. Baynard, WI Bar No. 1099898
Kyle R. Moore, WI Bar No. 1101745
Kiley B. Zellner, WI Bar No. 1056806
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: 414) 291-7979 / F: (414) 291-7960
Emails: gjg@guntalaw.com
 acw@guntalaw.com
 jmb@guntalaw.com
 krm@guntalaw.com
 kbz@guntalaw.com